UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
ROBERT ELLIS,

                    Plaintiff,                    **MEMORANDUM AND ORDER**
                                                                 17-CV-6656 (RRM)(SJB)

      -against-

RAYMOND KELLY, Commissioner of New
York City Police Department; NEW YORK CITY
POLICE DEPARTMENT; CHARLES ARNAO,
Shield # 169; PETER MANCERI, Shield #4881;
LIAM MORRIS, Shield #6779; PHIL THOMAS,
Shield # Unknown; LT. TIMOTHY MERCER; (A)
Deputy Commissioner of Pennsylvania State Police;
PENNSYLVANIA STATE POLICE; NORM J.
CRAMER, Shield # 7111; BALLIET DRUMER,
Shield # Unknown; GAIL BAILEY-WALLACE,
MD, Westchester Correctional Health Services
Department; RICHARD LAUX, PA, New York
State Department of Corrections and Community
Supervision, Auburn Correctional Facility; JOHN
DOES #1, #2, #3, #4, and #5, Auburn Correctional
Facility; Jointly, Separately, and Individually,
Respectively,

                    Defendants.
----------------------------------------------------------------X
ROSLYNN R. MAUSKOPF, United States District Judge:

       In the fall of 2017, plaintiff Robert Ellis, a New York State prison inmate, commenced this *pro se* § 1983 action against 17 defendants, alleging federal constitutional and state-law violations which occurred between 2007 and 2010. In a memorandum and order dated June 15, 2018 (the "Prior Order") (Doc. No. 9), the Court granted Ellis's request to proceed *in forma pauperis* but dismissed the action as time-barred. Although Ellis had alleged no facts in support of equitable tolling, the Court, in an abundance of caution, granted Ellis permission "to seek leave to amend in order to show why the statute of limitations should not bar his … action." (Prior Order, p. 5).

       Ellis has now filed two separate motions for leave to amend. However, as discussed below, these submissions only serve to further establish that his claims are time-barred and do

not establish a basis for equitable tolling.  Accordingly, Ellis's motion for leave to amend is denied and this action is dismissed.

## I. Background

On or about October 29, 2017, Ellis – then an inmate at Shawangunk Correctional Facility – commenced this action by mailing of a copy of a verified complaint to the Clerk of Court.  That pleading (the "Complaint") raised claims pursuant to 42 U.S.C. § 1983 against 17 defendants who, for purposes of this Memorandum and Order, can be grouped into four categories: 1) the "NYPD Defendants," 2) the "State Police Defendants," 3) Dr. Bailey-Wallace, and 4) the "Auburn Defendants."

There are six defendants in the first category: the New York City Police Department ("NYPD"); its former commissioner, Raymond Kelly ("Commissioner Kelly"); and four detectives – Charles Arnao, Peter Manceri, Liam Morris, and Phil Thomas (the "NYPD Detectives").  According to the Complaint, the NYPD Detectives used excessive force in arresting Ellis on the morning of July 12, 2007.  (Compl. ¶¶ 37–55).  The Complaint alleges that the detectives' actions not only "constituted cruel and unusual punishment and deliberate indifference" in violation of the Eighth and Fourteenth Amendments of the United States Constitution but also "constituted the tort of Assault and Battery under the color of state law." (*Id.*, ¶ 81).  Commissioner Kelly allegedly failed to supervise and train the detectives properly. (*Id.*, ¶ 79).  The NYPD is named as a defendant in the caption of the Complaint but is not listed as a party in a section of the Complaint entitled "Parties, Jurisdiction and Venue."  In addition, there are no allegations of actions or omission by the NYPD itself, separate and apart from the actions and omissions attributed to the other five NYPD Defendants.

The second category is comprised of four defendants: the Pennsylvania State Police (the "State Police"); a Deputy Commissioner of the State Police, Lt. Timothy Mercer; and two

2

Pennsylvania State Troopers: Norm J. Cramer and Balliet Drumer (the "Troopers"). The Complaint alleges that the Troopers witnessed the NYPD Detectives assault Ellis on July 12, 2007, but did not intervene. (*Id.*, ¶¶ 51–52, 85). Lt. Mercer allegedly failed to supervise and train the Troopers with respect to their duty to intervene and prevent the assault. (*Id.*, ¶ 83). The Complaint lists the State Police in the caption of the Complaint but – as with the NYPD – does not include the State Police in the section of the Complaint entitled "Parties, Jurisdiction and Venue." In addition, there are no allegations of actions or omissions by the State Police separate and apart from the actions and omissions attributed to the other three other State Police Defendants.

The third category contains only one defendant: Gail Bailey-Wallace, M.D., the Medical Director of Correctional Health Services at Westchester Medical Center in Valhalla, New York. The Complaint alleges that in an order dated September 8, 2008, Justice Lott of the Supreme Court of the State of New York directed that the Westchester County Department of Corrections give Ellis an MRI. (*Id.*, ¶ 83). Dr. Bailey-Wallace refused to obey that order, informing Justice Lott in a letter dated October 21, 2008, that the MRI was unnecessary. (*Id.*, ¶¶ 63–64).

The fourth category consists of six defendants employed by the New York State Department of Corrections and Community Supervision ("DOCCS") at Auburn Correctional Facility ("Auburn"): a Physician's Assistant named Richard Laux and five John Doe Defendants (the "Doe Defendants"). The Complaint alleges that on June 30, 2009, Laux refused Ellis medical treatment, stating that there was nothing wrong with him without even examining him. (*Id.*, ¶ 23). The pleading also alleges that the Doe Defendants denied Ellis's requests for medical treatment, including his request for an MRI, but does not allege when these actions or omissions occurred. (*Id.*, ¶ 91). However, in alleging that Ellis exhausted his administrative remedies, the

3

Complaint alleges that Ellis complained to Auburn's Superintendent, the facility's Nurse Administrator, and/or the State Commission of Corrections on July 8, 2009; October 9, 2009; and May 7, 2010; and filed formal grievances at Auburn on July 12, 2009; October 9, 2009; and June 7, 2010. (*Id.*, ¶¶ 24–25, 29–30, 33–34).

**The Prior Order**

In its "Prior Order," the Court dismissed all of Ellis's claims as time-barred. The Court noted that a three-year statute of limitations applies to § 1983 actions in New York, and that Ellis's claims accrued more than three years prior to the commencement of this action. Although the Complaint did not allege any facts in support of equitable tolling, the Court nonetheless gave Ellis 30 days in which to "seek leave to amend in order to show why the statute of limitations should not bar his § 1983 action." (Prior Order, p. 5). The Court advised Ellis to "include any facts that would support that statutory or equitable tolling of the statute of limitations period." (*Id.*).

**Ellis's Motions for Leave to Amend**

In response to the Prior Order, Ellis filed two distinct motions to amend. The first (Doc. No. 10) consists of a five-page motion dated July 6, 2018; 18 exhibits; and a 14-page amended complaint dated July 6, 2018. Ellis did not include an affidavit of service, but date stamps on this submission reveal that the first motion was received in the Pro Se Office on July 11, 2018.

The second motion (Doc. No. 11) contains a seven-page memorandum of law dated July 13, 2018; no exhibits; and a 16-page amended complaint dated July 13, 2018. In an undated cover letter accompanying this second motion, Ellis states that this submission was first mailed to the Court on July 13, 2018. However, the only copy of the second motion that the Court

received was the one attached to the cover letter – ostensibly, a second copy of the motion – which was not received by the Pro Se Office until July 27, 2018.

The memoranda of law included in the first and second motions to amend are nearly identical, except in two respects. First, the second memorandum of law (Doc. No. 11-1) references, but does not attach, the 18 exhibits submitted with the first memorandum of law. Second, the second memorandum of law adds approximately two pages of legal argument, beginning with the second full paragraph of page 4 and extending through the partial paragraph at the top of page 6. These two new pages contain no new facts relevant to issue of equitable tolling, but contain only state-law authorities relating to the issue of when tort claims accrue.

While the proposed amended complaint filed with the first motion is almost identical to the Complaint, the proposed amended complaint attached to the second motion differs from the Complaint in several respects. The proposed amended complaint attached to the second motion (Doc. No. 11-1) adds paragraphs describing the NYPD and the Pennsylvania State Police to the section of the pleading entitled "Parties," (*id.*, ¶¶ 20, 26), and includes two new causes of action relating to these parties, both alleging negligent hiring, training, and supervision, (*id.*, ¶¶ 80–81, 90–91). In addition, this pleading adds several new theories of liability, alleging that the NYPD Detectives violated the anti-retaliatory provisions of New York Executive Law § 296, and alleging § 1983 equal protection claims against the Troopers, Dr. Bailey-Wallace, Laux, and the Doe Defendants.

Although there is a question as to whether the second motion to amend was timely filed, the Court will assume that it was for purposes of this motion. The Court will deem the memorandum filed with the second motion to be an amended memorandum of law, superseding the memorandum of law filed with the first motion. In addition, the Court will deem the exhibits

included in the first motion to be attached to the amended memorandum of law (the "Amended Memorandum").

**The Amended Memorandum**

The Amended Memorandum explains in some detail why Ellis did not file this action sooner. First, Ellis asserts that, while he "suspected that he was injured" during the July 12, 2007, assault, he "did not learn of his injuries" until 2010. (Am. Memo., p. 3). On June 29, 2010, Ellis had an MRI of his right shoulder which revealed a superior labral tear (*id.*) – a tear of the fibrocartilage attached to the rim of the shoulder socket that helps keep the ball of the shoulder joint in place. *See* https://www.hopkinsmedicine.org/orthopaedic-surgery/specialty-areas/sports-medicine/conditions-we-treat/labral-tear-shoulder.html. Immediately after learning the results of this MRI, Ellis filed a § 1983 action in the Supreme Court of the State of New York, Queens County, against Commissioner Kelly, the NYPD Detectives, and the Troopers. (Am. Memo., p. 2; Ex. F). Although Ellis does not allege precisely when he filed this action, he alleges that it was filed within three years of the July 12, 2007, incident. (Am. Memo., p. 2). However, in late September 2010, the state court returned the § 1983 complaint to him with a note indicating that one or more of his submissions needed to be notarized.

On August 20, 2010, Ellis was transferred from Auburn Correctional Facility to Shawangunk Correctional Facility. (Am. Memo, p. 2; Ex. J). From October 21, 2010, to July 31, 2012, Ellis made regular trips between Shawangunk and other correctional facilities in connection with court proceedings in Queens County. (*Id.*). Ellis asserts that he was unable to access the law library or to resubmit his state-court action during this period. (Am. Memo., p. 2).

In addition, the right-handed Ellis had four different surgeries between February 2011 and April 2015 which allegedly limited his ability to write. Specifically, Ellis had surgery on his

right shoulder on February 15, 2011; his right elbow on June 14, 2013; his right wrist in June 2014; and his right shoulder again on April 28, 2015. Ellis asserts that, "[b]etween the multiple medical trips and [his] … inability to use his right hand," he "was in no position" to pursue a legal action. (*Id.*, p. 3). Accordingly, he contends that "equitable tolling should be applied … at minimum to 2015." (*Id.*).

Ellis does not specify precisely how much time he spent in the hospital or when his physical disability ended. However, he does allege that he refiled his state-court claim on three occasions between March 2015 and mid-July 2015. (*Id.*). Ellis's Amended Memo does not suggest any basis for equitably tolling for the period between mid-July 2015 and October 29, 2017, when he commenced this action by placing his complaint in the prison mailbox.

On August 15, 2016, Ellis filed a complaint with the New York State Commission on Judicial Conduct, complaining about the handling of his state-court action. (*Id.*). The Commission dismissed his complaint on January 20, 2017. (Ex. Q). Although Ellis claims that the Commission's action led to his "ultimately filing in the Eastern District," (Am. Memo., p. 3), he offers no explanation for why he waited over ten months after receiving the Commission's letter before commencing this action.

II.     **Standard of Review**

Under 28 U.S.C. § 1915A, a district court "shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A. Upon review, a district court shall dismiss a prisoner's complaint *sua sponte* if the complaint is "frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune from such relief." *Id.*; *Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (noting that s*ua sponte* dismissal of

7

frivolous prisoner complaints is not only permitted but mandatory*)*; *see also Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999). A complaint may be dismissed as frivolous prior to service where it is clear from the face of the complaint that the claim is time-barred under the applicable statute of limitations. *See Pino v. Ryan*, 49 F.3d 51, 54 (2d Cir. 1995).

*Pro se* complaints are held to less stringent standards than pleadings drafted by attorneys and the Court is required to read the plaintiff's *pro se* complaint liberally and interpret it raising the strongest arguments it suggests. *Erickson v. Pardus*, 551 U.S. 89 (2007); *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 191–93 (2d Cir. 2008). Moreover, at the pleadings stage of the proceeding, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 123 (2d Cir. 2010) (citing *Ashcroft v. Iqbal,* 556 U.S. 662 (2009)). "Ordinarily, the district court should not dismiss a *pro se* plaintiff's complaint without granting leave to amend 'when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Hariprasad v. New York*, 722 F. App'x 102, 103 (2d Cir. 2018) (summary order) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)); *see Adams v. Horton*, 725 F. App'x 78, 79 (2d Cir. 2018) (summary order).

While leave to amend is to be granted "freely ... when justice so requires," Fed. R. Civ. P. 15(a), "leave to amend should be denied if it would be futile." *Thompson v. Racette*, 519 F. App'x 32, 34 (2d Cir. 2013) (summary order) (citing *Cuoco*, 222 F.3d at 112). "[A] proposed amendment is considered futile and leave may be appropriately denied when the statute of limitations for asserting the amended claim has expired." *Lin v. Joedy*, 214 F. Supp. 3d 207, 211 (W.D.N.Y. 2016) (citing *Grace v. Rosenstock*, 228 F.3d 40, 53 (2000)).

### III. Discussion

"The statute of limitation for claims brought under 42 U.S.C. § 1983 is generally the statute of limitations for the analogous claim under the law of the state where the cause of action accrued." *McDonough v. Smith*, 898 F.3d 259, 265 (2d Cir. 2018) (internal quotation marks and

citation omitted), *cert. granted*, No. 18-485, 2019 WL 166879 (U.S. Jan. 11, 2019).  Because "§ 1983 claims are best characterized as personal injury actions," *Owens v. Okure*, 488 U.S. 235, 240 (1989), the applicable limitations period for § 1983 claims "is found in the general or residual [state] statute [of limitations] for personal injury actions." *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (alterations in original) (internal quotation marks and citation omitted).  Since New York law requires that most personal injury actions be commenced within three years, *see* N.Y. C.P.L.R. § 214(5), "[c]laims under § 1983 are governed by a three-year statute of limitations in New York." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 79 (2d Cir. 2015) (citing *Pearl*, 296 F.3d at 79.

In contrast, "the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (emphasis in original).  "Federal courts apply 'general ... common-law tort principles' to determine the accrual date of a Section 1983 claim." *Spak v. Phillips*, 857 F.3d 458, 462 (2d Cir. 2017) (quoting *Wallace*, 549 U.S. at 388).  "[I]t is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Smith v. Campbell*, 782 F.3d 93, 100 (2d Cir. 2015) (quoting *Wallace*, 549 U.S. at 388).  "Put other ways, an action accrues 'when the wrongful act or omission results in damages,' *id.*, and 'once the plaintiff knows or has reason to know of the injury which is the basis of his action,' *Veal v. Geraci*, 23 F.3d 722, 724 (2d Cir. 1994) (internal quotation marks omitted)." *McDonough*, 898 F.3d at 265.  However, a "cause of action accrues even though the full extent of the injury is not then known or predictable." *Wallace*, 549 U.S. at 391 (quoting 1 C. Corman, Limitation of Actions § 7.4.1, 526–527 (1991) (footnote omitted)).  "Were it otherwise, the statute would begin to run only after a plaintiff became satisfied that he had been

harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief." *Id.*

"Although federal law determines when a section 1983 claim accrues, state tolling rules determine whether the limitations period has been tolled, unless state tolling rules would 'defeat the goals' of section 1983." *Abbas v. Dixon*, 480 F.3d 636, 641 (2d Cir. 2007) (quoting *Pearl*, 296 F.3d at 80). No section of New York law provides "that the time for filing a cause of action is tolled during the period in which a litigant pursues a related, but independent cause of action." *Bd. of Regents of Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478, 486 (1980). In *Tomanio*, the Supreme Court "determined that New York's rules of tolling, insofar as they fail to provide that a § 1983 action is tolled while a related state action is being pursued, are not inconsistent with the provisions of 42 U.S.C. § 1983." *Leigh v. McGuire*, 507 F. Supp. 458, 460 (S.D.N.Y.), *aff'd without op.*, 659 F.2d 1060 (2d Cir. 1981); *see Robertson v. Finnegan*, No. 86-CV-6492 (MJL), 1989 WL 58023, at *3 (S.D.N.Y. May 23, 1989).

**A. The Claims against the NYPD Defendants and State Police Defendants**

While it may have taken until 2016 for Ellis to learn the full extent of the injuries inflicted by the NYPD Detectives, his § 1983 and state-law claims against these defendants accrued on July 12, 2007. "[A]n excessive force claim accrues 'when the use of force occurred.'" *McClanahan v. Kelly*, No. 12-CV-6326 (PGG), 2014 WL 1317612, at *4 (S.D.N.Y. Mar. 31, 2014) (quoting *Jefferson v. Kelly*, No. 06-CV-6616 (NGG) (LB), 2008 WL 1840767, at *3 (E.D.N.Y. Apr. 22, 2008)). Ellis's claims against the Troopers also accrued on July 12, 2007, since "a claim based on failure to intervene accrues when the failure to intervene occurs." *Thomas v. City of Troy*, 293 F. Supp. 3d 282, 303 (N.D.N.Y. 2018) (citing *Roundtree v. City of New York*, 15-CV-6582 (GHW), 2018 WL 443751, at *3 (S.D.N.Y. Jan. 16, 2018)). Ellis's

claims against Commissioner Kelly and Lt. Mercer for failure to train and supervise accrued that same day. *See Jones v. Swank*, No. 2:11-CV-797, 2012 WL 4107981, at *5 (S.D. Ohio Sept. 19, 2012) (claim for failure to train accrues when the plaintiff either knows or has reason to know of the injury that forms the basis of his claim). The claims against the NYPD and the State Police are based on the same acts underlying the claims against Commissioner Kelly and Lt. Mercer.

Since Ellis's claims against the NYPD Defendants and State Police Defendants accrued on July 12, 2007, the three-year statute of limitations expired on July 12, 2010. Ellis implies that he filed his state-court action against these defendants by that date. (Am. Memo., p. 2) (stating that Ellis filed his § 1983 action in state court "within the three (3) year time limitation"). However, New York law does not provide for tolling "during the period in which a litigant pursues a related, but independent cause of action," *Tomanio*, 446 U.S. at 486, and Ellis has not suggested any other basis for tolling the time prior to July 12, 2010. Accordingly, Ellis's § 1983 claims against the NYPD Defendants and the State Police Defendants are time-barred. It would be futile to permit Ellis to amend his pleading with respect to these defendants. *See Lin*, 214 F. Supp. 3d at 211.

**B. The Claims against Dr. Bailey-Wallace and the Auburn Defendants**

The determination of precisely when Ellis's claims accrued against Dr. Bailey-Wallace and the Auburn Defendants is complicated because it is unclear whether the continuing-violation doctrine applies to § 1983 claims that do not involve allegations of discrimination. "[T]he Second Circuit has not ruled directly on point, in a published case, that the continuing-violation doctrine applies in a failure-to-treat case." *Remigio v. Kelly*, No. 04-CV-1877 (JGK) (MHD), 2005 WL 1950138, at *9 n. 6 (S.D.N.Y. Aug. 12, 2005). However, in at least two cases, the Second Circuit has implied that it might. The first case – *Pino v. Ryan*, *supra* – involved an

appeal from the *sua sponte* dismissal of an inmate's complaint on the ground that the plaintiff's deliberate indifference claims against prison officials were time-barred. Although the complaint alleged only acts or omissions which occurred five years prior to the filing of the complaint, appellate counsel argued that it was at least "'conceivable' that further factual development of the record might have indicated that the defendants continued to deny [the inmate] medical treatment for the lingering effects of his injuries …." *Id.* at 54. While the Second Circuit affirmed the district court's decision, noting that it was within the judge's "discretion to dismiss … [the] complaint as facially time-barred," it noted that the plaintiff had "the opportunity to allege in a timely motion for reconsideration any additional facts that might have existed indicating wrongful conduct continuing within the limitations period." *Id.*

The second case – *Pratts v. Coombe*, 59 F. App'x 392, 395 (2d Cir. 2003) (summary order) – involved an appeal from the *sua sponte* dismissal of a complaint in which an inmate alleged that a doctor and a nurse at a state prison had been deliberately indifferent to his medical needs over a seven-year period. The Second Circuit not only construed the plaintiff's *pro se* appeal as arguing that this deliberate indifference claim was "not time-barred based on a theory of continuing violation," (*id.* at 395), but also provided the plaintiff with guidance as to how plead such a theory, stating that the plaintiff's "pursuit of a continuing violation claim requires him to plead both an ongoing policy of deliberate indifference and 'some non-time-barred acts taken in furtherance of that policy.'" *Id.* (quoting *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999)).

At least two district courts have cited to *Pratts* or *Pino* in extending the continuing-violation doctrine to § 1983 deliberate indifference claims. *See Crenshaw v. Wright*, No. 09-CV-6059L, 2009 WL 2447931, at *3 (W.D.N.Y. Aug. 3, 2009) (citing *Pratts* for the proposition that

"if a continuing violation can be shown, a plaintiff is entitled to bring suit challenging conduct that was a part of that violation, even conduct that occurred outside the statute of limitations period"); *Cole v. Miraflor*, No. 99-CV-977 (RWS), 2001 WL 138765, at *6 (S.D.N.Y. Feb. 19, 2001) (citing to *Pino* and applying the continuing violation doctrine in calculating the date on which a deliberate indifference claim accrued). However, other district courts have limited the continuing-violation doctrine to discrimination claims. *See Vested Bus. Brokers, Ltd. v. Cty. of Suffolk*, No. 16-CV-4945 (JMA) (SIL), 2017 WL 4122616, at *5 (E.D.N.Y. Sept. 15, 2017), *aff'd*, 741 F. App'x 39 (2d Cir. 2018); *Koehl v. Greene*, No. 9:06-CV-0478 (LEK) (GHL), 2007 WL 2846905, at *7 (N.D.N.Y. Sept. 26, 2007). In *Koehl*, Judge Kahn opined that it was "highly questionable whether the 'continuing violation' doctrine, which is 'largely a creature of Title VII employment discrimination law,' may also be applied in Section 1983 civil rights actions that do not involve allegations of discrimination." 2007 WL 2846905, at *7. Judge Kahn noted that *Pratts* was a summary order, and thus without precedential effect in this Circuit, and that *Pino* was "consistent with the proposition that the continuing-violation doctrine may apply to deliberate indifference claims arising under 42 U.S.C. § 1983 if those claims involve allegations of discrimination." *Id.* at *8 (emphasis omitted). In *Vested Bus. Brokers, Ltd.*, Judge Azrack, citing to *Koehl*, found that "the weight of authority in the Second Circuit appears to hold that the continuing-violation doctrine may not be applied to Section 1983 civil rights claims that do not involve allegations of discrimination." 2017 WL 4122616, at *5.

While this split of authority complicates the determination of precisely when Ellis's deliberate indifference claims accrued, the Court does not need to calculate that date with precision. The only allegations against Dr. Bailey-Wallace stem from her October 2008 refusal to order an MRI. The deliberate indifference allegations against the Auburn Defendants must

13

arise from actions or omissions which occurred prior to August 20, 2010, when Ellis was transferred from Auburn to Shawangunk Correctional Facility. Accordingly, even if Ellis could make out a continuing violation involving Dr. Bailey-Wallace and the Auburn Defendants, Ellis's deliberate indifference cause of action would accrue, at the very latest, on August 20, 2010 – more than seven years and two months before he commenced this action.

### C. Equitable Tolling

In his Amended Memorandum, Ellis argues that the Court should equitably toll the period between October 21, 2010, and sometime in 2015. (Am. Memo. at 2–3). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Watson v. United States*, 865 F.3d 123, 132 (2d Cir. 2017) (quoting *Mottahedeh v. United States*, 794 F.3d 347, 352 (2d Cir. 2015)). The second prong "is met only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond its control." *Frederick v. JetBlue Airways Corp.*, 671 F. App'x 831, 832 (2d Cir. 2016) (summary order) (quoting *Menominee Indian Tribe of Wis. v. United States*, 136 S.Ct. 750, 756 (2016)) (emphasis in *Menominee Indian Tribe*). In addition, the litigant "must further demonstrate that those circumstances *caused* him to miss the original filing deadline." *Watson*, 865 F.3d at 132 (quoting *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011)) (emphasis in *Watson*).

Ellis has not demonstrated a basis for equitable tolling. First, he claims that he was unable to file this action between October 21, 2010, and July 31, 2012, because he was being shuttled "back and forth to court" and was involved in a criminal case in Queens County. (Am. Memo. at 2). However, the document which Ellis has provided in support of this claim establishes that he remained in Shawangunk for months at a time during this 21-month period.

14

For example, he was at Shawangunk for over four months between November 19, 2010, and March 25, 2011; for most of the month of April 2011; for almost two months between June 3, 2011 and July 29, 2011; and for over a month between November 30, 2011, and January 6, 2012. Ellis does not explain what events beyond his control prevented him from filing an action during these eight months. To the contrary, his Amended Memorandum suggests that he himself may have chosen to concentrate on his criminal cases during this period. (*See* Am. Memo. at 2) ("These trips made it not possible . . . to resubmit as petitioner was facing a criminal trial in Queens County while appealing his conviction in Kings County.").

Second, Ellis claims that he had four surgeries between February 15, 2011, and April 28, 2015, that impeded his ability to write. However, these surgeries were generally more than a year apart. He had surgery to his right shoulder on February 15, 2011; surgery to his right elbow almost exactly 26 months later, on June 14, 2013; surgery to his right wrist a year after that, in June 2014; and a second surgery to his right shoulder on April 28, 2015. (Am. Memo. at 3). "[H]ospitalization may demonstrate extraordinary circumstances, … depending on the facts presented," but "a party seeking equitable tolling based on a medical condition or hospitalization would be expected to provide corroborating evidence of the condition and its severity." *Harper*, 648 F.3d at 137 & n.4. Here, Ellis has not provided any evidence that these surgeries required prolonged hospitalization or rendered him so disabled as to justify tolling the entire period from February 15, 2011, to the end of 2015. Indeed, Ellis himself alleges that he filed submissions in his state-court case on July 15, 2015 – less than two months after his second shoulder surgery.

In sum, even assuming that the continuing-violation doctrine applies to § 1983 deliberate indifference claims and that Ellis's claims against Dr. Bailey-Wallace and the Auburn Defendants accrued on August 20, 2010, these claims would still be time-barred unless Ellis

could establish equitable tolling of four years and two months.  Ellis has not demonstrated a basis for equitably tolling that lengthy a period of time.  Accordingly, it would be futile to grant Ellis leave to amend his claims against Dr. Bailey-Wallace and the Auburn Defendants.

## CONCLUSION

For the reasons stated above, Ellis's motions for leave to amend are denied as futile because all of his federal claims are time-barred.  The Court declines to exercise supplemental jurisdiction over Ellis's state-law claims.  This action is dismissed without prejudice to continuing to pursue the state-law claims in the action which Ellis has already filed in the Supreme Court of the State of New York.

The Clerk of Court is directed to enter judgment in accordance with this Memorandum and Order and to close this case.  The Clerk of Court shall also send a copy of the judgment and this Memorandum and Order to Ellis at the address listed for him on the docket.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for purpose of an appeal.  *See Coppedge v. United States,* 369 U.S. 438, 444–45 (1962).

SO ORDERED.

Dated: Brooklyn, New York
      March 18, 2019

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge